[No. 23355. Department Two. December 11, 1931.]

THE CITY OF TACOMA, *Appellant*, v. RUSSELL C. PETERSON *et al.*, *Respondents*.[1]

[1]Reported in 5 P. (2d) 1022.

462

W. W. *Mount, John E. Gallagher,* and *Bartlett Rummel,* for appellant.

*L. B. Sulgrove* and *Wright & Catlett,* for respondents.

BEALS, J.—The city of Tacoma instituted this action against Russell C. Peterson, who served as city controller from June, 1928, to November, 1929, and the surety on Mr. Peterson's official bond. In its complaint, plaintiff stated two causes of action, it being alleged in the first that one C. E. Torkelson, being indebted to the city in the sum of $2,500, executed and delivered his promissory note, bearing date November 17, 1926, due in two years, whereby he promised to pay to the city the amount of his indebtedness, together with interest at the rate of six per cent per annum, the note being endorsed by two other persons.

The complaint further alleged that, during the month of November, 1928, the city entered into a contract with Mr. Torkelson for the construction of a storm drain, the contract price being approximately $40,000; that Mr. Torkelson's note was then in the possession of the defendant Peterson, in his official capacity as city controller; and that, when defendant settled with Mr. Torkelson under the contract for the construction of the drain, defendant failed to retain out of the money due Mr. Torkelson on the contract the amount of the promissory note and interest, to plaintiff's damage in the amount due on the note.

For a second cause of action, plaintiff alleged that, in accordance with the terms of the contract with Mr. Torkelson calling for the construction of the drain, the city advanced certain engineering expenses, etc., which

were to be repaid to the city by Mr. Torkelson out of the contract price; and that defendant Peterson failed to deduct from the payments which became due under the contract the amount so due the city, in the sum of $4,050.

After the argument of several questions of law, defendants answered, denying any liability to plaintiff, and alleging affirmatively that the mayor of Tacoma and other city officers participated with defendant Peterson in the acts of which the city complained; that defendant Peterson had consulted his assistant and a "state examiner," and, in paying the money to Mr. Torkelson, had followed the advice which he had received, and that he had paid the money in good faith. The defendants further alleged that the city had made no demand upon Mr. Torkelson for the payment of the note, or for the payment of the engineering costs. By its reply, plaintiff denied the affirmative allegations of the answer.

On demand of defendants Peterson and his surety, the former mayor of Tacoma and the surety upon his official bond were made parties defendant, together with the surety of a deceased member of the board of contracts and awards, defendant Peterson claiming by way of a cross-complaint that, if any liability to the city existed on his part, the additional defendants should share the same.

Upon the trial of the action before the court, sitting without a jury, defendants, at the close of plaintiff's case, challenged the sufficiency of the evidence, and moved for judgment in their favor. The trial court, being of the opinion that, under the evidence, plaintiff was not entitled to recover as against any of the defendants upon either of the causes of action set forth in its complaint, sustained the challenge and entered

judgment dismissing the action, from which judgment plaintiff appeals.

■ The additional defendants brought in upon motion of the original defendants have moved to dismiss the appeal, basing their motion upon the ground that appellant neither sued them nor seeks against them any relief, and that, therefore, there is no controversy pending between appellant and the moving respondents.

The additional defendants, being the moving respondents above referred to, were brought into the action by way of a cross-complaint filed by the original defendants. They objected to being brought into the action, but no questions concerning the propriety of the ruling of the court making them additional parties are now before us. They are, of course, as the record stands, concerned in the ultimate result of the action. Whether they were made parties thereto by the plaintiff or by cross-complaint filed by the original defendants, is, as far as the question now being considered is concerned, immaterial. They are parties to the action, and no ground exists for dismissing this appeal as to them.

This ruling disposes of the motion made by the respondents who were the original defendants to dismiss the appeal in case the motion of the additional respondents above referred to should be granted. The motions to dismiss the appeal are denied.

■ In regard to the first cause of action set forth in appellant's complaint, and the evidence introduced by appellant in support thereof, it is evident that Mr. Peterson was, to say the least, extremely careless in the performance of his official duty. The city attorney, as the law officer of the city of Tacoma is denominated by the charter, is by that instrument made the legal

adviser of the city officials, including the city controller; and, as Mr. Peterson knew that he had in his possession Mr. Torkelson's note for $2,500, his attention having been particularly directed thereto in connection with the matter of the payment to Mr. Torkelson of money due under the contract for the construction of the drain, Mr. Peterson, as city controller, should have, in the manner prescribed by charter, requested the advice of the city attorney as to the proper method of procedure to be followed by him in making claim upon the note, if any such claim should have been set up at that time. It is doubtless true that the city controller could have held out of the contract price, money to apply upon the note, only in so far as it should appear that payments under the contract were due to Mr. Torkelson, and that no claims had arisen to such money under the trust fund doctrine, or under any other circumstances which would render the rights of the claimant superior to those of the city under its note.

By its bond, Mr. Peterson's surety undertook that he would

" . . . well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as said controller and honestly account for all moneys coming into his hands as said controller."

In the absence of any showing that Mr. Peterson was guilty of bad faith or anything more than mere carelessness or ignorance of his duties in failing to call upon the city attorney for legal advice, we conclude that the trial court rightly held that appellant had failed to make a *prima facie* case under its first cause of action. In the case of *State v. Chadwick,* 10 Ore. 465, the court said:

"The law presumes, generally, that every one may be honest and diligent, but not that he is skilled in any particular art. Hence, since the appellant in the transaction of his appointment is not a party to a contract, the principles applicable in the case of a contracting party cannot apply to him. He executes a duty imposed by the public, and it would seem, therefore, that he should be held liable for that degree of skill only which he possesses."

In Throop on Public Offices, page 258, § 243, the rule is laid down as follows:

"An official bond, whatever special conditions it may contain, almost invariably contains a general condition that the officer shall faithfully discharge the duties of his office. This condition is not broken by an honest error of judgment, or an honest mistake, or want of skill in the discharge of a duty, where the precise mode of discharging it is not pointed out by the statute."

In 46 C. J. 1043, it is said, referring to the general rule protecting judges from civil liability for acts within the limits of their jurisdiction, that the rule also "applies to officers exercising quasi-judicial powers whose discharge involves the exercise of judgment and discretion," and that such officers are not liable for error or mistake of judgment in the exercise thereof in the absence of corrupt or malicious motives. The opinion of this court in the case of *Emery v. Littlejohn,* 83 Wash. 334, 145 Pac. 423, Ann. Cas. 1915D 767, is of interest in this connection, as are also the following authorities: *Alexandria v. Corse,* 1 Fed. Cas. No. 183, p. 393 (this case, however, indicates that gross negligence may be the legal equivalent of want of fidelity); *Bank of the United States v. Brent,* 2 Fed. Cas. No. 910, p. 688; *Union Bank v. Clossey,* 10 Johnson (N. Y.) 271; *Commercial Trust Co. v. Burch,* 267 Fed. 907; 22 R. C. L. 485, § 163.

█ In regard to the second cause of action stated by appellant, a different question is presented. The contract between the city and Mr. Torkelson provided that the contractor should pay to the city for engineering and inspection expense and for bond insurance and advertising a total of $4,050. This contract was officially placed with Mr. Peterson, who drew warrants pursuant thereto covering the amounts payable thereunder. The question is: Was Mr. Peterson's duty in connection with this contract ministerial merely, or was he called upon to exercise discretion? Mechem's Public Officers, § 657, quotes the supreme court of Alabama in the case of *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65, as follows:

"The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act."

Counsel for respondents contend that, in disbursing money under this contract, Mr. Peterson was not performing a ministerial function, but was exercising his judgment or discretion, and that the same rule should apply in passing upon the second cause of action and the evidence introduced pursuant thereto as we have held applicable to the first cause of action. The distinction, however, is clear. The money for engineering and other expense was due to the city from Mr. Torkelson under the very contract pursuant to which Mr. Peterson was drawing warrants in favor of Mr. Torkelson's assignee. The contract is plain and unambiguous and, in so far as Mr. Peterson's duties were concerned (referring to the question here presented), called for the exercise of neither judgment nor dis-

cretion, but for ministerial functions only. In the case of *State v. Howard,* 83 Vermont 6, 74 Atl. 392, the court defined a ministerial duty as follows:

"A ministerial duty is one regarding which nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist. . . . If the duty is one that requires the exercise of judgment in its performance it is not ministerial but discretionary. . . . The ascertainment of a fact which raises the duty, or is collateral to its performance, is not such an exercise of judgment as will deprive the duty of its ministerial character. . . . If the duty imposed is itself definite and precise, the fact that the official is permitted a choice of methods or instrumentalities in discharging it will not control the classification."

This court, in the case of *State ex rel. Pratt v. Seattle,* 73 Wash. 396, 132 Pac. 45, said:

"It is said, however, that the statute does not authorize a collection by withholding the amount thereof from the sums due the contractor, even though it be conceded that power to collect is granted. It is true the method by which the collection is to be made is not prescribed by the statute; but since the authority is given, the city is permitted to pursue any or all of the methods of making the collection that is recognized by the general laws. Where the obligations are of equal degree, it is a recognized method of making collections to balance accounts; that is to say, a person having money in his possession belonging to another may retain such money as an offset to any indebtedness of equal degree therewith which such other may be owing to him. This rule applies with particular force to the state and its municipal institutions. Indeed it would be such a breach of duty as to amount practically to malfeasance in office for an officer of a municipality to pay moneys from the municipal treasury to an individual when that individual was owing a like sum to the municipality. Clearly, therefore, since these obligations were of equal degree, it was the right of the municipality to retain from the

contractors the moneys it was obligated to pay on their behalf.''

 In this connection, respondents contend that, before suing its own officer, the city must attempt to collect from the contractor the money due it. Under the circumstances here shown, the city may proceed directly against its controller. *Northern Trust Company v. First National Bank of Buffalo,* 25 N. D. 74, 140 N. W. 705. The following authorities are also in point: *Pacific County v. Willapa Harbor Publishing Co.,* 88 Wash. 562, 153 Pac. 360; *Hillyard ex rel. Tanner v. Carabin,* 96 Wash. 366, 165 Pac. 381; *Wilcox v. Porth,* 154 Wis. 422, 143 N. W. 165; *Neacy v. Drew,* 176 Wis. 348, 187 N. W. 218; and *Mines v. Del Valle,* 201 Cal. 273, 257 Pac. 530.

We conclude that, as to its second cause of action, appellant made a *prima facie* case, and that the judgment entered by the trial court dismissing the action must be reversed, with instructions to proceed with the trial. It is so ordered.

TOLMAN, C. J., MAIN, HOLCOMB, and MILLARD, JJ., concur.